UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

**FILED**

01 APR 18 PM 1:27

U.S. DISTRICT COURT
N D OF ALABAMA

| | |
|---|---|
| RANDY SKINNER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   Civil Action No: CV-00-S-2075-NE |
| | ) |
| TYSON FOODS, INC.; and, | ) |
| CONNECTICUT GENERAL LIFE | ) |
| INSURANCE COMPANY, | ) |
| | ) |
| Defendants. | ) |

**ENTERED**

APR 18 2001

### MEMORANDUM OPINION

Plaintiff, Randy Skinner, is a former employee of defendant Tyson Foods, Inc.  He worked for that company slightly more than three years, from April 19, 1995, until May 26, 1998.  During that period, he enrolled in a group health plan sponsored by Tyson for the benefit of its employees.  The plan also provided coverage for "eligible dependents" of employees, defined as the employee's spouse and any dependent, unmarried children under the age of 19 years who reside with the employee.[1]  On or about May 10, 1998, plaintiff "advised Tyson that his daughter, Vanessa Skinner[,] was scheduled for surgery for a sinus related condition on June 4, 1998[,] and that he desired to continue his health insurance coverage" beyond his last day of employment for Tyson, in order to

---

[1]See Exhibit B to the Notice of Removal filed July 25, 2000:  *i.e.*, a copy of the summary of the Tyson Group Health Plan, ¶ A.5, at 3.

pay the costs attendant to that surgical procedure.[2]  According to

plaintiff, Tyson "repeatedly advised" him that "his health

insurance coverage would continue in effect after his employment

terminated,"[3] and that "his health insurance would cover his

daughter's surgery scheduled for June 4, [1998]."[4]  Those

representations proved to be false, and plaintiff commenced an

action against Tyson in the Circuit Court for Cullman County,

Alabama on June 9, 2000.  He asserted state law claims for fraud,[5]

breach of contract,[6] breach of fiduciary duty,[7] conversion,[8] and

negligence.[9]  In addition, he claimed that Tyson had:  "interfered

with [his] attainment of rights secured by ERISA";[10] and, failed to

provide either notice of his right to continue health insurance

coverage beyond his last day of employment for Tyson "under COBRA,"

---

[2]Plaintiff's state court complaint (Exhibit A to defendant's notice of removal) ¶ 8, at 2.  (*Nota bene*: the date actually alleged by plaintiff in this paragraph was "May 10, 1995," but that made no sense and, obviously, was a scrivener's error.)

[3]*Id.* ¶ 9.

[4]*Id.* ¶ 10.  (*Nota bene*: the date actually alleged by plaintiff in this paragraph was "June 4, 2000," but, again, that made no sense and, even though such mispleading becomes wearisome and, ultimately, troublesome, obviously was a scrivener's error.)

[5]*Id.* ¶¶ 1-16, at 1-3 (denominated "Count One").

[6]*Id.* at 3-4 (mis-described as "Count Three": *i.e.*, there is no "Count Two").

[7]*Id.* at 4-5 ("Count Four").

[8]*Id.* at 5 ("Count Five").

[9]*Id.* at 6-7 ("Count Eight").

[10]*Id.* at 6 ("Count Six").

or the forms necessary to make such an election.[11]

Tyson removed the action to this court on July 25, 2000, asserting federal question jurisdiction over the claims asserted by plaintiff pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* Plaintiff did not challenge the removal or this court's jurisdiction.

Plaintiff has twice amended his complaint in this court. His first amended complaint added Connecticut General Life Insurance Company as a defendant, and alleged that it served as "Plan Administrator" for the Tyson health plan.[12] Plaintiff's second amended complaint asserts three claims ostensibly based upon federal law against Tyson and Connecticut General: *i.e.*, "breach of fiduciary duty," for failing to pay his daughter's surgical and related medical expenses;[13] failure to provide timely notice of plaintiff's right under the Comprehensive Omnibus Budget Reconciliation Act of 1985, 29 U.S.C. §§ 1161-69 ("COBRA"), to elect continuation of health insurance coverage beyond the last day he worked for Tyson;[14] and, "breach of fiduciary duty" for preventing plaintiff's redemption of Tyson stock accumulated

---

[11]*Id.* ("Count Seven").

[12]Plaintiff's amended complaint (doc. no. 11) ¶ 4, at 2.

[13]Plaintiff's second amended complaint (doc. no. 17) ¶¶ 25-27, at 4-5 ("Count One").

[14]*Id.* ¶¶ 28 & 29, at 5 ("Count Two").

pursuant to the company's "Retirement Savings/Stock Purchase Plan."[15] In addition, plaintiff asserted two supplemental state law claims. One is against Tyson only, and it claims that defendant failed "to pay plaintiff earned vacation pay."[16] The other, and the more troublesome, claim is asserted against both Tyson and Connecticut General, and claims compensatory and punitive damages under the law of the State of Alabama for the defendants' bad faith failure to pay plaintiff's claim for his daughter's medical and surgical expenses. Specifically, plaintiff asserts that "[t]he actions and omissions of the defendants as alleged in ¶¶ 13-19 and ¶ 25 herein amount to bad faith refusal to pay benefits under Ala.Code § 27-12-24."[17]

The action presently is before the court on two motions: defendants' joint motion to strike plaintiff's state law claim for bad faith, his claim for extra-contractual, punitive damages,[18] and his demand for trial by jury[19] pursuant to Rules 12(f) and 39(a)(2)

---

[15]*See id.* ¶¶ 2, 20-23, & 30-31 ("Count Three").

[16]*Id.* ¶33, at 6 ("Count Five"); *see also id.* ¶ 24, at 4.

[17]*Id.* ¶ 32, at 6 ("Count Four"); *see also* plaintiff's response in opposition to defendants' joint motion to strike certain claims (doc. no. 23), Tab B ("plaintiff's more definite statement in clarification of the second amended complaint").

[18]*Id.* ¶ 3, at 6.

[19]Plaintiff's demand for a jury trial is contained in a most unusual place: the title of his pleading; *i.e.*, "SECOND AMENDED COMPLAINT and JURY DEMAND" (doc. no. 17).

(doc. no. 20); and, "Plaintiff's Rule 12(c) Motion Suggesting as an Alternative that the Court Treat the Joint Motion as One for Summary Judgment" (doc. no. 23, Tab C).  This court shall address defendants' motion first.

## A.   Motion to Strike State Law Claims

The Alabama Supreme Court first recognized a cause of action in tort for an insurance company's bad faith failure to pay a policy claim in *Chavers v. National Security Fire & Casualty Co.*, 405 So. 2d 1 (Ala. 1981), *appeal after remand*, 456 So. 2d 293 (Ala. 1984); *see also Sexton v. Liberty National Life Insurance Co.*, 405 So. 2d 18 (Ala. 1981); *Gulf Atlantic Life Insurance Co. v. Barnes*, 405 So. 2d 916 (Ala. 1981).  The judicially-created, common law action had five elements:

> (a)  An insurance contract between the parties and a breach thereof by the defendant;

> (b)  An intentional refusal to pay the insured's claim;

> (c)  The absence of any reasonably legitimate or arguable reason for that refusal;

> (d)  The insurer's actual knowledge of the absence of any legitimate or arguable reason;

> (e)  If the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to

refuse to pay the claim.

*National Secuity Fire & Casualty Co. v. Bower*, 417 So. 2d 179, 183 (Ala. 1982); *see also, e.g.*, *Independent Fire Insurance Co. v. Lunsford*, 621 So. 2d 977 (Ala. 1993) (reiterating *Bower* elements).

The Alabama statute cited by plaintiff in Count Four of his second amended complaint, Alabama Code § 27-12-24, represents a legislative "codification of the [judicially-created, common law] tort of bad faith." *Hilley v. Allstate Insurance Co.*, 562 So. 2d 184, 185 n.1 (Ala. 1990). That section reads as follows:

> No <u>insurer</u> shall, without just cause, refuse to pay or settle claims arising under coverages provided by <u>its policies</u> in this state and with such frequency as to indicate a general business practice in this state, which general business practice is evidenced by:
>
> (1) A substantial increase in the number of complaints against the insurer received by the insurance department;
>
> (2) A substantial increase in the number of lawsuits against the insurer or its insureds by claimants;
>
> (3) Other relevant evidence.

Alabama Code § 27-12-24 (1975) (1998 Replacement Vol.) (emphasis supplied). The statute was codified in Chapter 12 ("Trade Practices Law") of Title 27: the "title [which] constitutes the Alabama Insurance Code." *Id.* § 27-1-1. The purpose of those statutes codified in Chapter 12 was stated as follows:

> The purpose of this chapter is to regulate trade practices <u>in the business of insurance</u> in accordance with the intent of congress as expressed in the Insurance Regulation Act by defining, or providing for the determination of, all such practices in this state which constitute unfair methods of competition or unfair or deceptive acts or practices and by prohibiting the trade practices so defined or determined.

*Id.* § 27-12-1(a) (emphasis supplied).  The terms "insurance" and "insurer" are defined in § 27-1-2, as follows:

> For the purpose of this title, the following terms shall have the meanings respectively ascribed to them by this section.
>
> (1)  INSURANCE.  A contract whereby one undertakes to indemnify another or pay or provide a specified amount or benefit upon determinable contingencies.
>
> (2)  INSURER.  Every person engaged as indemnitor, surety or contractor in the business of entering into contracts of insurance.
>
> . . . .

Alabama Code § 27-1-2(1) & (2).

At least two other judges of this court have held that the state legislative codification of Alabama's preexisting, common law tort of bad faith refusal to pay a valid insurance claim is saved from ERISA preemption because it "regulates insurance." *See, e.g.*, *Gilbert v. ALTA Health & Life Insurance Company*, 122 F.Supp.2d 1267, 1273 (N.D. Ala. 2000) (Johnson, J.); *Hill v. Blue Cross Blue Shield of Alabama*, 117 F.Supp.2d 1209, 1212 (N.D.Ala. 2000) (Acker, J.).  Both judges first observed, as has this court *supra*, that the

judically-created remedy was codified by the legislature "within the insurance title of the Code." *Gilbert*, 122 F. Supp. 2d at 1272 (quoting *Hill*, 117 F. Supp. 2d at 1211-12) (internal quotation marks omitted).   Additionally, Judge Johnson observed that the pattern jury instructions for the tort of bad faith promulgated by the Supreme Court of Alabama's standing committee on civil jury instructions were cataloged in the chapter pertaining to "Insurance." *Gilbert*, 122 F. Supp. 2d at 1272.   Those instructions provide that:

> Every <u>insurance policy</u> contains a duty implied by law of good faith and fair dealing with the other party to the policy.   This duty requires that neither party interfere with the rights of the other to receive the benefits of the <u>policy</u>.   The plaintiff claims that the <u>defendant insurer</u> has violated this implied duty of good faith and fair dealing.

> The <u>defendant insurer</u> denies that it has violated this implied duty of good faith and fair dealing. Therefore, the burden is upon the plaintiff to reasonably satisfy you from the evidence of the truthfulness of each of the following claims:

> 1. That there was <u>an insurance contract</u> between the parties;

> 2. That by the terms of the contract the <u>defendant insurer</u> was obligated to pay the plaintiff's claim;

> 3. That the <u>defendant insurer</u> intentionally refused to pay the plaintiff's claim;

> 4. That there was no reasonably legitimate, arguable or debatable reason for that refusal to pay, that is, no reason that was open to dispute or question; and

> 5. That the <u>defendant insurer</u> had actual knowledge that there was no reasonably legitimate, arguable or debatable reason.

1 *Alabama Pattern Jury Instructions — Civil* § 20.37, at 560 (2d ed. 1993) (emphasis supplied). Finally, both judges observed that the Supreme Court of Alabama clearly has limited the action to claims involving contracts of insurance.

> Although we agree that every contract does impose an obligation to act in good faith and to deal fairly (*see, e.g.*, § 7-1-203, Ala.Code 1975, for the obligation imposed in the commercial context), <u>we have consistently refused to extend to the area of general contract law the tort of bad faith that we have recognized in the context of insurance policy cases</u>. ...

*American Cast Iron Pipe Co. v. Williams*, 591 So. 2d 854, 857 (Ala. 1991) (emphasis supplied). For these reasons, Judges Acker and Johnson concluded "that 'the only targets for the tort of bad faith in Alabama are insurance companies' and ... the Alabama tort of bad faith for refusal to pay benefits clearly regulates insurance." *Gilbert*, 122 F. Supp. 2d at 1272 (quoting *Hill*, 117 F. Supp. 2d at 1212). It was but a short walk from such conclusions through those cases construing the McCarran-Ferguson Act and ERISA's "savings clause" to the dispositive judgment: the Alabama tort action for an insurance company's bad faith refusal to pay a valid insurance claim "falls within the ERISA savings clause and is not preempted by ERISA." *Gilbert*, 122 F. Supp. 2d at 1273.

Judges Johnson and Acker also determined that a recent Supreme Court decision supported the conclusion that Alabama's bad faith statute is not preempted by ERISA. *See UNUM Life Insurance Company of America v. Ward*, 526 U.S. 358, 119 S.Ct. 1380, 143 L.Ed.2d 462 (1999). In *UNUM*, the Court implied that a state cause of action for bad faith would be saved by ERISA's "savings clause" (29 U.S.C. § 1144(b)(2)(A)), if it were specifically directed to the insurance industry. *Id.* at 377, 119 S.Ct. at 1391 ("[*Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d.39 (1987)] concerned Mississippi common law creating a cause of action for bad faith breach of contract, law not specifically directed to the insurance industry and therefore not saved from ERISA preemption.").

At issue in the instant action are health benefits provided according to the Group Health Plan Trust ("the Tyson Plan") established by plaintiff's employer, Tyson Foods, Inc. ("Tyson"). The Tyson Plan is self-funded by Tyson, in part through employee payroll deductions, and is administered by Connecticut General Life Insurance ("Connecticut General").[20]

Plaintiff concedes that Tyson cannot be held liable under Alabama law. ERISA preempts "any and all state laws insofar as

---

[20]Notice of Removal (doc. no. 1), Ex. C at 1.

they may now or hereafter relate to any employee benefit plan"
covered by ERISA. *First National Life Insurance Company v.
Sunshine-Jr. Food Stores, Inc.*, 960 F.2d 1546, 1549 (11th Cir.
1992), *cert. denied*, 506 U.S. 1079, 113 S.Ct. 1045, 122 L.Ed.2d 354
(1993). "A state law relates to an employee benefit plan if it
"has a connection with or reference to such a plan." *Id.* at 1550
(citing *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97, 103 S.Ct.
2890, 2900, 77 L.Ed.2d 490 (1983)). Even so, the savings clause
provides that "[e]xcept as provided in [the deemer clause], nothing
in this subchapter shall be construed to exempt or relieve any
person from any law of any State which regulates insurance..." 29
U.S.C. § 1144(b)(2)(A). The deemer clause provides: "Neither an
employee benefit plan ... nor any trust established under such a
plan, shall be deemed to be an insurance company ... or to be
engaged in the business of insurance." 29 U.S.C. §1144(B).

Because the Tyson Plan is self-funded, *Hill* and *Gilbert* do not
apply. The Supreme Court addressed the inapplicability of state
insurance regulation to self-funded plans in *FMC Corporation v.
Holliday*, 498 U.S. 52, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990). *FMC
Corporation* involved a Pennsylvania statute that precluded
insurance companies from demanding reimbursement for medical
expenses from individuals who had recovered damages in tort against

11

negligent drivers of motor vehicles.  *Id*. at 55, 111 S.Ct. at 406.

The Court found that the Pennsylvania statute fell within ERISA's

savings clause.  *Id*. at 60-61, 111 S.Ct. at 409.  The Court held

that the Pennsylvania statute was preempted by ERISA because the

plan at issue was self-funded.

> We read the deemer clause to exempt self-funded
> ERISA plans from state laws that "regulat[e] insurance"
> within the meaning of the saving clause.  By forbidding
> States to deem employee benefit plans "to be an insurance
> company or other insurer ... or to be engaged in the
> business of insurance," the deemer clause relieves plans
> from state laws "purporting to regulate insurance."  As
> a result, <u>self-funded ERISA plans are exempt from the</u>
> <u>state regulation insofar as that regulation "relate[s]</u>
> <u>to" the plans</u>.  State laws directed toward the plans
> are pre-empted because they relate to an employee benefit
> plan but are not "saved" because they do not regulate
> insurance.  State laws that directly regulate insurance
> are "saved" but do not reach self-funded employee benefit
> plans because the plans may not be deemed to be insurance
> companies, other insurers, or engaged in the business of
> insurance for purposes of such state laws.  <u>On the other</u>
> <u>hand, employee benefit plans that are insured are subject</u>
> <u>to indirect state insurance regulation</u>.  An insurance
> company that insures a plan remains an insurer for
> purposes of state laws "purporting to regulate insurance"
> after application of the deemer clause.  The insurance
> company is therefore not relieved from state insurance
> regulation.  The ERISA plan is consequently bound by
> state insurance regulations insofar as they apply to the
> plan's insurer.

*Id*. at 61, 111 S.Ct. at 409 (emphasis added).

Likewise, the statute at issue here falls within ERISA's

savings clause because it "regulates insurance."  *See Gilbert*, 122

F. Supp. 2d at 1273; *Hill*, 117 F. Supp. 2d at 1212.  Even so, the

statute does not apply to the Tyson Plan, because the Plan cannot be "deemed to be an insurance company." Therefore, Alabama Code § 27-12-24 does not reach the Tyson Plan.

ERISA also preempts plaintiff's state law claims against Connecticut General. In *Howard v. Parisian, Inc.*, 807 F.2d 1560 (11th Cir. 1987), the Eleventh Circuit held that ERISA preempts the assertion of state law claims against non-fiduciary plan administrators, even though ERISA does not regulate their duties. The Eleventh Circuit reasoned: "Section 1144(a) preempts *all* state laws insofar as they relate to employee benefit plans and is not limited to state laws as applied only to plan fiduciaries." *Id.* at 1565. Still, plaintiff argues that § 27-12-24 applies to Connecticut General, because it is an insurance company.[21] Even so, the mere fact that Connecticut General is an insurance company is not sufficient to establish that it is subject to the regulation of Alabama Code § 27-12-24. The statute requires an "insurer" that fails to pay claims under "its policies." Connecticut General's relationship to Tyson is not that of an "insurer." Connecticut General does not insure the Tyson plan, and there is no insurance contract between Connecticut General and the Tyson Plan or its

---

[21]Plaintiff has not argued that Connecticut General is not an ERISA fiduciary. Nevertheless, the determination of Connecticut General's fiduciary status is unnecessary, because ERISA defensively preempts state law causes of action against even non-fiduciary administrators, and federal jurisdiction over this action is not at issue.

beneficiaries.  Because Connecticut General is not an "insurer" in this action, and because it does not have a "policy" involved in this action, § 27-12-24 does not apply.  If the statute applied to mere plan administrators, it would not be directed at the insurance industry, and would be preempted by ERISA.[22]  *See Mullenix v. Aetna Life and Casualty Insurance Company*, 912 F.2d 1406, 1413 (11th Cir. 1990) (holding action against third party administrator preempted by ERISA even though Alabama statute regulates insurance, because there was no insurance policy, insurance fund, or insurer that could be subject to state regulation); *see also Howard*, 807 F.2d at 1565 n.2 (observing that the savings clause does not apply to an insurance company acting as an administrator for a self-funded plan).

For the foregoing reasons, plaintiff's claim under Alabama Code § 27-12-24 is due to be stricken.  As a consequence, his claims for extracontractual damages and demand for a jury trial also are due to be stricken.  An order consistent with this memorandum opinion shall be entered contemporaneously herewith.

---

[22]Plaintiff also argues that ERISA does not preempt his state law claims for extra-contractual and punitive damages.  Plaintiff's argument has no merit because all common law tort causes of action that do not focus specifically on the insurance industry are preempted.  *See* UNUM Life Insurance Company of America v. Ward, 526 U.S. 358, 367-68, 119 S.Ct. 1380, 1386, 143 L.Ed.2d 462 (1999); *see also* Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 53-4, 107 S.Ct. 1549, 1556 (1987).

**B.    12(c) Motion**

Plaintiff requests this court to treat defendants' motion to strike his state law claims and jury demand as a motion for summary judgment.[23]   Rule 12(c) of the Federal Rules of Civil Procedure provides, in part:

> If, on a motion for judgment on the pleadings, <u>matters outside the pleadings are presented to and not excluded by the court</u>, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

(emphasis suppled).   The provisions of Rule 12(c) do not apply, however, because matters outside the pleadings have not been presented to, or considered by, the court.   During oral argument, counsel for plaintiff expressed concern that he had not been able to conduct discovery concerning the relationship between Connecticut General and the Tyson Plan.   Such discovery is unnecessary and, therefore, plaintiff's motion is due to be denied.

DONE this the _18th_ day of April, 2001.

United States District Judge

---

[23]Plaintiff's Rule 12(c) Motion (doc. no 23, Tab C).